UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:20-cv-60873-SINGHAL

FITNESS OM LLC d/b/a CLUB PILATES,

        Plaintiff,

vs.

ARCH INSURANCE COMPANY,

        Defendant.

_____/

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Arch Insurance Company ("Arch") respectfully moves the Court to enter judgment in its favor on the claims filed against it by Plaintiff Fitness OM LLC d/b/a Club Pilates ("Plaintiff"), and states as follows:

**I.     INTRODUCTION**

Plaintiff operates a Pilates studio in Fort Lauderdale, Florida.  Plaintiff purchased a Commercial Inland Marine policy from Arch that covers losses caused by direct physical loss or damage to covered property.  Plaintiff's covered property is sports equipment and contents in its Pilates studio.  After government orders were issued to slow the spread of COVID-19, including the closing of gyms and fitness studios in Florida, Plaintiff purportedly closed its Pilates studio to the public and submitted an insurance claim to Arch for lost business income.  Arch denied the claim because Plaintiff's business losses were not caused by direct physical loss or damage to its

sports equipment and contents, as required by the policy, or by a civil authority order that prohibited access to its studio due to direct physical loss or damage to other people's property. Instead, Plaintiff's losses were caused by government measures to slow the spread of COVID-19 through social distancing. After Arch denied the claim, Plaintiff filed this lawsuit. Plaintiff sued Arch for declaratory judgment and breach of contract, seeking coverage under the policy.

For the following reasons, judgment should be entered in Arch's favor on all of Plaintiff's claims against it:

First, a requirement for coverage under the policy is "direct physical loss or damage to Covered Property." Plaintiff does not meet this requirement. Plaintiff does not and cannot allege that its losses were caused by direct physical loss or damage to the sports equipment and contents in its Pilates studio. Plaintiff alleges that government orders closing gyms and fitness centers to slow the spread of COVID-19 precluded Plaintiff from using the sports equipment and contents to operate a Pilates studio open to the public. Complaint ¶ 19. In other words, Plaintiff alleges its business losses arose from nothing happening to its property. However, loss of use of property for reasons other than tangible impairment of the property is simply not covered by the plain and unambiguous terms of the policy.

Second, none of the government orders alleged trigger civil authority coverage under the policy. The policy affords coverage if an action of civil authority prohibits access to Plaintiff's premises due to direct physical loss or damage to property other than at Plaintiff's premises. None of the orders attached to the Complaint were issued because of direct physical loss or damage to property at someone else's premises and none prohibited Plaintiff from accessing its Pilates studio to offer virtual classes, for example.

Third, Plaintiff's losses are excluded under the policy. There is an exclusion for losses caused by or resulting from a loss of market. Plaintiff's losses were caused by a loss of market and not direct physical loss or damage to property. For this reason alone, there is no coverage under the policy for Plaintiff's losses.

## II. BACKGROUND

### A. The Policy

Arch issued a Commercial Inland Marine policy to Plaintiff bearing policy number SBIML0087802 for the period of May 1, 2019 to May 1, 2020 (the "Policy"). Complaint ¶ 8. The Policy is attached to Plaintiff's Complaint as Exhibit A. (Doc. No. 1-1). The Policy insures "Sports Equipment and Contents" located at 3802 N. Federal Highway, Fort Lauderdale, Florida, up to a limit of $100,000. Policy at 28 (Miscellaneous Articles Declaration) (Doc. No. 1-1). Specifically, the Policy's XPONENTIAL FITNESS ENDORSEMENT (the "Fitness Endorsement") provides:

> A. Coverage
> We will pay for loss of or damage to Covered Property from any of the Covered Causes of Loss.
> 1. Covered Property
> Covered Property, as used in this coverage form, means the property described in the Declarations that:
> a. You own, or
> b. Is in your care, custody or control.
>
> 2. Property Not Covered
> Covered Property does not include:
> a. Real Property, except glass included on Form IL 1201, where applicable;
> b. Aircraft, Motor Vehicles designed for highway use or Watercraft;
> c. Property after it is sold and delivered or otherwise disposed of, including property sold under a deferred payment sales agreement; or
> d. Contraband, or property in the course of illegal transportation or trade.

       3.      Covered Causes Of Loss
Covered Causes of Loss means Direct Physical Loss or Damage to Covered Property except those causes of loss listed in the Exclusions.

Policy at 30, Fitness Endorsement, at ¶ A.1.

### *Business Income and Extra Expense Coverage*

In addition, the Policy covers certain "business income" and "extra expense" losses, as follows:

    13.    Business Income and Extra Expense
        a.    Coverage is extended to cover "Business Income"/"Extra Expense" incurred when your covered property is damaged by a Covered Cause of Loss.
We will pay any "Extra Expense" to continue your normal operations:
    (1)    at the described premises; or
    (2)    at replacement premises or temporary locations; including:
        (a)    relocation expenses; and
        (b)    costs to equip or operate the replacement or temporary locations; and
We will also pay for any corresponding "Extra Expense" to minimize the suspension of your normal operations if you cannot continue them.

        b.    We will pay for the actual loss of "Business Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. The coverage for "Business Income" will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins. The coverage for "Extra Expense" will begin immediately after the time of that action and will end: (1) 3 consecutive weeks after the time of that action; or (2) when your "Business Income" coverage ends; whichever comes first.

Policy at 28, Fitness Endorsement at ¶ A.13. "Business income" and "extra expense" are defined as follows:

        c.    The following, when used in this section, are defined as follows:

4

   (1) "Business Income" means Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred during the "period of restoration;" and continuing normal operating expenses including payout.
   (2) "Extra Expense" means necessary expenses you incur during the "Period of Restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
   (3) "Period of Restoration" means the period of time that:
     (a) Begins with the date of physical loss or damage caused by or resulting from any Covered Cause of Loss; and
     (b) Ends on the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality.
     (c) "Period of Restoration" does not include any increased period required due to the enforcement of any ordinance or law that regulates the construction, use or repair, or requires the tearing down of any property; or requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.
     (d) The expiration date of this policy will not cut short the "Period of Restoration."

Policy at 28, Fitness Endorsement at ¶ A.13.

### *Exclusion for Delay, Loss of Use, and Loss of Market*

The Policy includes the following exclusion:

We will not pay for loss or damage caused by or resulting from any of the following:
 * * *
b. Delay, loss of use, loss of market or any other consequential loss.

Policy at 28, Fitness Endorsement at ¶ B.2.b.

  **B.**  **The Alleged Loss**

Plaintiff alleges it owns and operates a fitness studio in Fort Lauderdale, Florida. Complaint ¶ 3. Plaintiff alleges it sustained "direct physical loss" and "loss of business income," and incurred "extra expense" as a result of the COVID-19 pandemic and various executive orders issued by Governor DeSantis in Florida to slow the community spread of COVID-19.

5

Complaint ¶¶ 16-20.  The following are the executive orders at issue in the Complaint:

*Executive Order No. 20-51*: On March 1, 2020, Governor DeSantis issued Executive Order No. 20-51 and declared a state of emergency in Florida as a result of COVID-19. Complaint ¶ 16.  Executive Order No. 20-51 is attached to the Complaint as Ex. B.  (Doc. No. 1-2).

*Executive Order No. 20-71*: On March 20, 2020, Governor DeSantis issued Executive Order No. 20-71, closing gyms and fitness centers in Florida as a result of COVID-19.  The order is attached to the Complaint as Ex. C. (Doc. No. 1-3, § 3).  Executive Order No. 20-71 stated:

> WHEREAS, on March 15, 2020, President Donald J. Trump and the Centers for Disease Control and Prevention ("CDC") issued the "15 Days to Slow the Spread" guidance advising individuals to adopt far-reaching social distancing measures, such as avoiding gatherings of more than 10 people, and in states with evidence of community spread, bars, restaurants, food courts, gyms and other indoor and outdoor venues where groups of people congregate should be closed.
> 
> \* \* \*
> 
> WHEREAS, the State Surgeon General has advised me that gyms and fitness centers are establishments that attract gatherings of more than 10 people and are more susceptible for spreading COVID-19.
> 
> \* \* \*
> 
> Section 3.  Gyms and Fitness Centers
> 
> I hereby order the closure of gymnasiums and fitness centers within the State of Florida.  This order shall not apply to gymnasiums and fitness centers which are (1) amenities of hotels which have a capacity of 10 persons or less, (ii) are an amenity of a residential building, (iii) are interior to any fire or police stations or (iv) are located inside any single-occupant office building.

Executive Order No. 20-71 at 1, 4-5 (Doc. No. 1-3, at 1).

*Executive Order No. 20-91*:  On April 1, 2020, Governor DeSantis issued Executive Order No. 20-91 "to take action to ensure that the spread of COVID-19 is slowed, and that residents and visitors in Florida remain safe and secure."  (Doc. No. 1-4, at 2).  The Order is attached to the Complaint as Exhibit D.  (Doc. No. 1-4).  Executive Order No. 20-91 required

6

that "all persons in Florida shall limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities." (Doc. No.1-4, at § 1.B). The Order defines the meaning of "essential services," which did not include fitness centers. (Doc. No.1-4, at § 2).

Plaintiff alleges it sustained "a direct physical loss" and "suffered loss of business income [and] has incurred 'extra expense.'" Complaint ¶ 19; *see also id.* ¶ 22. Plaintiff filed a claim with Arch for "lost income as a result of [its] inability to conduct normal operations as a result of the Coronavirus with a reported date of loss of March 17, 2020." Complaint, Exhibit E (Doc. No. 1-5).

### C. Arch's Coverage Position and This Lawsuit

On March 23, 2020, American Specialty, Arch's claims administrator, sent a letter to Plaintiff denying coverage for Plaintiff's claim. The letter stated: "It is our understanding that your business has been shut down by government order to reduce the spread of the COVID-19 virus. Our investigation has concluded that there was no direct physical damage to your property caused by a peril resulting from this date of loss." (DE 1-5).

Plaintiff subsequently filed this coverage action against Arch asserting a count for declaratory judgment and a count for breach of contract.

## III. MEMORANDUM OF LAW

### A. Motion-for-Judgment-on-the-Pleading Standard

"Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law." *Medkser v. Feingold*, 307 Fed. Appx. 262, 264 (11th Cir. 2008). When considering a motion for judgment on the pleadings, a court may consider documents attached to the complaint if they are central to

the plaintiff's claim and undisputed. *Bank of Camilla v. St. Paul Mercury Ins. Co.*, 531 Fed. Appx. 993, 994 (11th Cir. 2013).

"In ruling on a motion for judgment on the pleadings, the Court applies a standard very similar, if not identical, to that when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6)." *Artell v. ARS Nat'l Servs.*, No. 15-22580-CIV-WILLIAMS, 2016 U.S. Dist. LEXIS 154163, at *3 (S.D. Fla. Nov. 4, 2016). As such, "[a]lthough a plaintiff need not provide 'detailed factual allegations,' a plaintiff's complaint must provide 'more than labels and conclusions.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "'A formulaic recitation of the elements of a cause of action will not do . . . [and] factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.*

### B. Principles of Policy Interpretation Under Florida Law

Under Florida law, the interpretation of an insurance policy, like any contract, is a matter of law to be decided by the court.[1] *Hegel v. First Liberty Ins. Corp.,* 778 F.3d 1214, 1219 (11th Cir. 2015). "In insurance coverage cases under Florida law, courts look at the insurance policy as a whole and give every provision its 'full meaning and operative effect.'" *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Hyman v. Nationwide Mut. Fire. Ins. Co.,* 304 F.3d 1179, 1186 (11th Cir. 2002)). "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "'[I]f a policy

---

[1] Florida law applies to this coverage dispute. *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.,* 657 F.3d 1135, 1141 (11th Cir. 2011); *Shapiro v. Associated Intern. Ins. Co.*, 899 F.2d 1116. 1119-1121 (11th Cir. 1990). "[H]owever, the case law of other jurisdictions that have examined similar policy provisions may be considered to determine the issues of state law as [the] Court believes the Florida Supreme Court would." *Trailer Bridge,* 657 F.3d at 1141.

8

provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'" *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.,* 913 So. 2d 528, 532 (Fla. 2005) (quoting *Hagen v. Aetna Cas. & Sur. Co.,* 675 So.2d 963, 965 (Fla. 5th DCA 1996)).

"'[I]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous.'" *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 412 F.3d 1224, 1228 (11th Cir. 2005) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). "But courts should not strain to find ambiguity." *Id.* "'Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule about ambiguity apposite.'" *Id.* (quoting *Excelsior Ins. Co. v. Ponoma Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979)). "In sum, if there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning." *Id.* The lack of a definition of a term in a policy does not render the policy provision ambiguous. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998) ("reject[ing] the argument that because the words 'irritant' and 'contaminant' are not defined, the policy exclusion is ambiguous.").

### C. Plaintiff's Losses Are not Covered Under the Policy

Plaintiff alleges that it sustained direct physical loss, business income, and extra expense losses as a result of Governor DeSantis' executive orders issued to slow the spread of COVID-19, including an order closing commercial gyms and fitness centers in Florida like Plaintiff's. Complaint ¶¶ 16-20. The plain and unambiguous language of the Policy does not provide coverage for Plaintiff's losses.

### 1. There is No Business Income and Extra Expense Coverage Because Plaintiff Has Not Sustained Direct Physical Loss or Damage to Covered Property

Plaintiff alleges that due to Governor DeSantis' executive orders, "the insured property is not able to function as intended" and "Plaintiff has lost the use of the insured property . . . and the ability to operate as a fitness center" and suffered business income and extra expense losses. Complaint ¶¶ 19, 20. However, business income and extra expense coverage under the Policy is only available where the Plaintiff has sustained "**Direct Physical Loss or Damage to Covered Property**." Some demonstrable physical impairment or physical compromise to the integrity of Plaintiff's equipment and the contents of the Pilates studio is required. Plaintiff has alleged no such damage here.

Specifically, the Policy provides that it "will pay for loss of or damage to Covered Property from any of the Covered Causes of Loss." Policy at 30, Fitness Endorsement ¶ A (Doc. No. 1-1 at 30). Further, the Policy provides that "[c]overage is extended to cover 'Business Income'/'Extra Expense' incurred *when your covered property is damaged* by a Covered Cause of Loss." Policy at 33, Fitness Endorsement ¶ A.13 (Doc. No. 1-1 at 33) (emphasis added).

The Policy defines "Covered Causes of Loss" as "*Direct Physical Loss or Damage to Covered Property* except those causes of loss listed in the Exclusions." Policy at 30, Fitness Endorsement ¶¶ A & A.3 (Doc. No. 1-1 at 30) (emphasis added). "Covered Property" is identified as "Sports Equipment and Contents" located at 3802 N. Federal Highway, Fort Lauderdale, Florida. Policy at 28, 30, Fitness Endorsement ¶ A.2 & Miscellaneous Articles Declarations; Fitness Endorsement (Doc. No. 1-1 at 28, 30).

The phrase "Direct Physical Loss or Damage to Property" is not defined in the Policy. "When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such

10

meaning." *GEICO v. Macedo,* 228 So. 3d 1111, 1113 (Fla. 2017). *Merriam-Webster Dictionary* defines "direct" as "proceeding from one point to another in time or space without deviation or interruption: STRAIGHT" and "marked by absence of an intervening agency, instrumentality, or influence." https://www.merriam-webster.com/dictionary/direct?src=search-dict-hed (quoting definitions of "direct adjective," 1.a. and 4.a.).

In addition, *Merriam-Webster Dictionary* defines "physical" as "of or relating to natural science," "having material existence: perceptible especially through the senses and subject to the laws of nature" and "of or relating to material things." https://www.merriam-webster.com/dictionary/physical (quoting definitions of "physical adjective," 1.a., 2.a &b).

Further, courts require that there be a demonstrable physical alteration to the covered property. The U.S. District Court for the Southern District of Florida has explained that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CV-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)) (holding that restaurant's cleaning of dust and debris from road construction was not physical loss or damage to property). Courts in other jurisdictions similarly hold that tangible impairment to property is required. *See Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp.3d 323 (S.D.N.Y. 2014) (holding no business interruption coverage where office building was preemptively closed in preparation for storm and there was no structural damage to offices); *Roundabout Theatre Co., Inc. v. Continental Cas. Co.,* 302 A.D.2d 1, 3, 6-8 (N.Y. Sup. Ct. App. Div. 2002) (holding no coverage for cancellation

11

of 35 scheduled performances of *Cabaret* caused by closure of street fronting theatre and precluding the public's access due to scaffolding that fell from nearby building because the theatre sustained no physical damage); *Universal Image Productions, Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (holding mold and bacteria in a building did not constitute "direct physical loss because that phrase 'contemplates change in insured property' or 'tangible' damage.").

As alleged in the Complaint, nothing has happened to the equipment and contents in Plaintiff's Pilates studio. Government orders temporarily precluded Plaintiff from opening its doors to the public. This is a very different scenario from cases that do find direct physical loss or damage to property. For example, in *Azalea, Ltd. v. American States Ins. Co.*, vandals dumped an unknown substance into a sewage treatment facility serving a mobile home park. The substance adhered to the walls of the facility and had to be chipped away to be removed. In addition, the substance destroyed the bacterial colony in the plant that was an integral part of the sewage treatment process. *See Azalea, Ltd. v. American States Ins. Co.*, 656 So. 2d 600, 601-02 (Fla. 1st DCA 1995). The policy at issue provided: "We will pay for **direct physical loss of or damage to Covered Property** . . . ." *Id.* at 600 (emphasis added). The trial court concluded that the insured's "loss of use" of the sewage treatment facility did not constitute direct physical loss, as required by the policy language. *Id.* at 602. However, the appellate court reversed based on the circumstances of the loss – "residue from the dumped substance actually covered and adhered to the interior of the structure causing destruction of the bacteria colony which was an integral part of the covered facility." *Id.*

By contrast, in *Mama Jo's, Inc. v. Sparta Ins. Co.,* the court concluded that a restaurant's cost to clean dust and debris from road construction work was not covered because it did not

constitute "direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss," because there was no "'actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made.'" 2018 WL 3412974, at **1, 9 (citations omitted). Plainly, if dust and debris do not constitute "direct physical loss of or damage to Covered Property," then Plaintiff's allegations, which are devoid of any physical component of loss or damage to the insured sports equipment and contents of the Pilates studio, must also fail.[2]

Plaintiff alleges that its "loss of use of the insured property and insured property's inability to function as intended . . . is a direct physical loss." Complaint ¶ 20. However, the inability to use property because someone or something external to the property has precluded its use is not direct physical loss or damage under the Policy. In *Newman Myers*, power company Con Edison preemptively shut off power to certain power distribution centers that supplied power to 40 Wall Street in New York City where the insured law firm's offices were located, prior to Hurricane Sandy making landfall. The power remained cut for approximately four days. The law firm made a claim for business interruption coverage because of the loss of power to 40 Wall Street and not because of any structural damage to the building or its offices. In holding that there was no coverage under the policy, the court wrote: "The words 'direct' and 'physical,'

---

[2] In *Social Life Magazine, Inc. v. Sentinel Insurance Company, Ltd.,* No. 20-cv-3311, the U.S. District Court for the Southern District of New York denied a motion for preliminary injunction filed by a magazine publisher seeking business interruption coverage due to the COVID-19 pandemic because there was no property damage to the insured's property to trigger coverage. *See* May 14, 2020 Transcript, at Tr. 15:8-18, attached hereto as **Exhibit A**; *see also* Tr. 8:16-18 ("That is what has caused the damage is that the governor has said you need to stay home. It is not that there is any particular damage to your specific property."). Following the hearing, the plaintiff filed a notice of dismissal, (Doc. No. 28), and wrote a letter to the court stating it believed a written order on its motion for preliminary injunction was not required. (Doc. No. 29). The court subsequently closed the case without entering a written order. (Doc. No. 30).

which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id.* at 331.  The court further stated: "[T]he Court is unaware of authority supporting, [the law firm's] argument that 'direct physical loss or damage' should be read to include [or] to extend to mere loss of use of a premises, where there has been no physical damage to such premises." *Id.*

Similarly, the fact that government orders precluded Plaintiff from using its sports equipment and contents for in-person workouts does not constitute direct physical loss or damage to property in the absence of tangible harm to the property itself. *See, e.g., Source Food Tech., Inc. v. United States Fidelity & Guaranty Co.,* 465 F.3d 834, 837-38 (8th Cir. 2006) (holding no business interruption coverage where insured could not import Canadian beef product due to USDA prohibition on the importation of ruminants after a Canadian cow tested positive for mad cow disease because the beef product insured sought to import suffered no physical contamination); *Roundabout Theatre Co.,* 302 A.D.2d at 3, 6-8 (holding no direct physical loss resulting from City's closure of street fronting theatre due to the collapse of scaffolding at a nearby building where the theatre suffered no physical damage).

Plaintiff does not allege tangible impairment of its equipment and contents.  Plaintiff only alleges not being able to use the equipment and contents to operate a Pilates studio because of government's efforts to slow the spread of COVID-19 by implementing social distancing through a variety of measures, including closing gyms and fitness centers in Florida.  Complaint ¶¶ 19-20; Executive Order No. 20-71, attached to Complaint as Exhibit **C** (Doc. No. 1-3) ("President Donald J. Trump and [the CDC] issued the '15 Days to Slow the Spread' guidance advising individuals to adopt far-reaching social distancing measures, such as avoiding

14

gatherings of more than 10 people, and in states with evidence of community spread, bars, restaurants, food courts, gyms and other indoor and outdoor venues where groups of people congregate should be closed. . . . . I hereby order the closure of gymnasiums and fitness centers within the State of Florida."); Executive Order No. 20-91, attached to the Complaint as Exhibit **D** (Doc. No. 1-4) ("WHEREAS, it is necessary and appropriate to take action to ensure that the spread of COVID-19 is slowed, and that residents and visitors in Florida remain safe and secure"; "[A]ll persons in Florida shall limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities.").

Lastly, other provisions of the Policy support the fact that physical loss or damage to property is a requirement for coverage. "Business income" and "extra expense" coverage are limited to a "period of restoration." Policy at 33, Fitness Endorsement ¶ 13.c(1) & (2) (Doc. No. 1-1, at 33). "Period of restoration" is defined as "the period of time that: (a) Begins with the date of physical loss or damage caused by or resulting from any Covered Cause of Loss; and (b) Ends on the date *when the property should be repaired, rebuilt or replaced* with reasonable speed and similar quality." Policy at 33, Fitness Endorsement ¶ 13.c(3)(a) & (b) (Doc. No. 1-1, at 33) (emphasis added). "The words 'repair' and 'replace' contemplate physical damage to insured [property] as opposed to loss of use of it." *Newman Myers,* 17 F. Supp.3d at 332.

Because there is no direct physical loss to the contents and equipment in Plaintiff's Pilates studio, Plaintiff's losses are not covered by the Policy.

2. **There is No Civil Authority Coverage Because the Government Orders Do Not Prohibit Access to Plaintiff's Premises Due to Direct Physical Loss of or Damage to Property of Others**

In addition to seeking business income and extra expense losses due to direct physical

loss or damage to Plaintiff's property, Plaintiff seeks coverage for business income and extra expense losses pursuant to the civil authority provision of the Policy. Complaint ¶ 20. The Policy provides: "We will pay for the actual loss of 'Business Income' you sustain and necessary 'Extra Expense' caused by action of *civil authority* that *prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises*, caused by or resulting from a Covered Cause of Loss." Policy at 33, Fitness Endorsement ¶ A.13.b (Doc. No. 1-1 at 33) (emphasis added). Thus, according to the plain and unambiguous language of the Policy, to be entitled to coverage, the business income or extra expense loss must be: "(1) caused by an action of civil authority; (2) the action of civil authority must prohibit access to the described premises of the insured; (3) the action of civil authority prohibiting access to the described premises **must be caused by direct physical loss of or damage to property other that at the described premises**; and (4) the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy." *Dickie Brennan & Co., Inc.,* v. *Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (emphasis added) (holding no civil authority coverage because there was no causal link between hurricane evacuation order and physical damage to property). Plaintiff cannot establish that the executive orders prohibited access to its Pilates studio because of direct physical loss or damage to other premises.

First, there must be a nexus between the civil authority action and physical loss or damage to property. *See Dickie Brennan & Co., Inc.,* 636 F.3d at 686-87 ("The general rule is that '[c]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property.'"); *Paradies*

*Shops, Inc. v. Hartford Fire Ins. Co.,* No. 03-3154, 2004 WL 5704715, at **6-7 (N.D. Ga. Dec. 15, 2004) (holding there was no civil authority coverage because FAA orders grounding planes because of threat of future terrorist attacks on September 11 did not prohibit access to the insured's gift shops at airports due to physical loss or damage to property); *Syufy Enters. v. Home Ins. Co. of Ind.,* No. 94-0756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (holding no civil authority coverage because curfews were imposed to "prevent looting, rioting and resulting property damage" and not because of property damage to adjacent property); *United Air Lines, Inc. v. Ins. Co. of State of PA,* 439 F.3d 128, 130 (2d Cir. 2006) (holding, in part, no civil authority coverage because order grounding planes was based on the fear of future terrorist attacks and not because of adjacent property damage). Plaintiff does not and cannot allege such a nexus. It is clear from the four corners of the executive orders attached to the Complaint that they were not issued as a result of direct physical loss or damage to property at plaintiff's or any other premises. Rather, the orders were issued to slow the spread of COVID-19 through social distancing measures.

Second, even if Plaintiff could establish that the executive orders were issued as a result of direct physical loss or damage to property, civil authority coverage is not triggered unless access to the insured's premises is fully prohibited by the civil authority action. *See, e.g., S. Hospitality, Inc. v. Zurich Am. Ins. Co.,* 393 F.3d 1137, 1139-41 (10th Cir. 2004) (holding civil authority coverage was not triggered by FAA order grounding flights after September 11 because the order did not "prohibit access" to plaintiff's hotels, it only made it more difficult to access them); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.,* 97-153, 1999 WL 33537191, at *3 (N. D. Miss. Nov. 4, 1999) (holding that civil authority coverage was not triggered by bridge closure because plaintiff continued to operate casino-hotel and to accept customers); *Syufy Enters.*, 1995

17

WL 129229, at *2 (holding no civil authority coverage was triggered because curfews imposed in San Francisco, Los Angeles, and Las Vegas following the verdict in the Rodney King case did not prohibit access to plaintiff's premises in those cities).

Plaintiff does not allege that access to its premises was fully prohibited by the executive orders. Plaintiff alleges that it was required to close its doors to the public to implement social distancing measures to slow the spread of COVID-19. Complaint ¶¶ 19-20. Although Executive Order No. 20-71, attached to the Complaint, ordered gyms and fitness centers to close, it did not preclude Plaintiff from accessing its premises to offer virtual classes. (Doc. No. 1-4).

Third, as set forth above, Plaintiff does not and cannot allege direct physical loss or damage to its covered property (sports equipment and contents) or anyone else's property.

### 3. Plaintiff's Losses Result from Causes Excluded By the Policy

The Policy does not cover risks excluded by the Policy. Excluded from coverage are "loss or damages caused by or resulting from . . . . [d]elay, loss of use, loss of market, or any other consequential loss." Doc. No. 1-1 at 35 (Fitness Endorsement ¶ 13.B.2.b). Where losses are excluded by the plain and unambiguous terms of the policy, the exclusion must be enforced. *National Union Fire Ins. Co. of Pittsburgh, PA v. Texpak Group N.V.,* 906 So. 2d 300 (Fla. 3d DCA 2005) (holding there was no business interruption coverage because the losses complained of – costs incurred as a result of design defect – were excluded under the policy). Plaintiff's losses are caused by a loss of market and not by direct physical loss or damage to property.

The phrase "loss of market" is unambiguous. *Merriam-Webster Dictionary* defines "market" as "a geographic area of demand for commodities or services;" "a specified category of potential buyers;" "the course of commercial activity by which the exchange of commodities is effected: the extent of demand;" "an opportunity for selling;" and "the available supply of or

18

potential demand for specified goods or services." https://www.merriam-webster.com/dictionary/market?src=search-dict-hed (quoting definitions of market in 4.a-c). In addition, "market" has been defined to mean "the geographical or economic extent of commercial demand for any particular product and generally refers to a more or less identifiable group of prospective purchasers seeking a particular type of product offered by a more or less identifiable group of sellers." *Boyd Motors, Inc. v. Employers Ins. of Wausau,* 880 F.2d 270, 273 (10th Cir. 1989) (construing unambiguous exclusion in inland marine policy). "[A] market is lost when, for example, due to delay in distribution, changes in consumer habits, etc., a certain type of product is no longer in demand with its intended purchasers." *Id.*

Plaintiff's alleged losses are caused by a temporary loss of market for fitness services because the executive orders temporarily closed fitness centers and ordered people in Florida to stay at home to slow the spread of COVID-19. Losses caused by loss of market are excluded by the Policy. Plaintiff cannot recover for an otherwise excluded cause of loss by characterizing an indirect damage as direct physical loss.

## CONCLUSION

For the foregoing reasons, Arch respectfully requests the Court to enter judgment in Arch's favor on all of Plaintiff's claims against it.

>Respectfully submitted,
>
>STROOCK & STROOCK & LAVAN LLP
>200 South Biscayne Boulevard
>Suite 3100
>Miami, Florida 33131
>Tel:  (305) 358-9900
>Fax:  (305) 789-9302
>
>By:   s/ Laura Besvinick
>     Laura Besvinick, Esq.
>     Florida Bar Number: 391158
>     lbesvinick@stroock.com
>     asantiesteban@stroock.com
>     Julie E. Nevins, Esq.
>     Florida Bar Number: 182206
>     jnevins@stroock.com
>     asantiesteban@stroock.com
>
>*Attorneys for Defendant Arch Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 18, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>By:   s/ Laura Besvinick